IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HOT SPRINGS DIVISION


KEVIN MICHAEL SEAMANS                                    PLAINTIFF


     v.                       CIVIL NO. 10-6017


MICHAEL J. ASTRUE, Commissioner
Social Security Administration                           DEFENDANT


**MEMORANDUM OPINION**

     Plaintiff, Kevin Michael Seamans, brings this action pursuant to 42 U.S.C. § 405(g),

seeking judicial review of a decision of the Commissioner of the Social Security Administration

(Commissioner) denying his claims for supplemental security income (SSI) benefits under the

provisions of Title XVI of the Social Security Act (Act).  In this judicial review, the Court must

determine whether there is substantial evidence in the administrative record to support the

Commissioner's decision.  See 42 U.S.C. § 405(g).

**I.       Procedural Background:**

     Plaintiff protectively filed his current application for SSI on October 5, 2007, alleging

an inability to work since December 28, 1999, due to scoliosis, borderline intellectual

functioning, a reading disorder and a math disorder. (Tr. 77-79).  An administrative hearing was

held on May 27, 2009, at which Plaintiff appeared with counsel and testified. (Tr. 23-41).

By written decision dated July 31, 2009, the ALJ found that during the relevant time period, Plaintiff had an impairment or combination of impairments that were severe. (Tr.12). Specifically, the ALJ found Plaintiff had the following severe impairments:

> idiopathic scoliosis of the spine status post posterior spinal fusion surgery from T4 to L4; reading disorder; mathematics disorder; borderline range of intelligence; and adjustment disorder with mixed emotional features.

(Tr. 12). However, after reviewing all of the evidence presented, he determined that Plaintiff's impairments did not meet or equal the level of severity of any impairment listed in the Listing of Impairments found in Appendix I, Subpart P, Regulation No. 4. (Tr. 12). The ALJ found Plaintiff retained the residual functional capacity (RFC) to:

> perform light work as defined in 20 CFR 416.967(b). The claimant can occasionally lift 20 pounds and 10 pounds frequently; sit about 6 hours per 8 hour workday; and stand/walk for 6 hours per 8 hour workday. The claimant would be limited to unskilled work, in that interpersonal contact incidental to work performed; tasks must be learned by rote; requiring limited judgment; little supervision for routine matters; and detailed supervision for non-routine maters (sic). In addition, the claimant's learning disorder suggested that formal classroom training would not be a good training method; rather on the job training would be better. In addition, the claimant would perform better on work performed slowly and correctly rather than quickly.

(Tr. 14). With the help of a vocational expert, the ALJ determined Plaintiff could perform work as a housekeeper and a shirt presser. (Tr. 21).

Plaintiff then requested a review of the hearing decision by the Appeals Council, which, after reviewing additional evidence, denied that request on January 20, 2010. (Tr. 1-4). Subsequently, Plaintiff filed this action. (Doc. 1). This case is before the undersigned pursuant to the consent of the parties. (Doc. 5). Both parties have filed appeal briefs, and the case is now ready for decision. (Docs. 9,10).

-2-

AO72A
(Rev. 8/82)

**II.     Evidence Presented:**

At the administrative hearing held before the ALJ on May 27, 2009, Plaintiff testified that he was twenty-two years of age and obtained a high school education through resource classes. (Tr. 26). Plaintiff testified that during his last two years of school he spent one half of the day in class and the other half of the day training at rehabilitation. (Tr. 27). There is evidence revealing Plaintiff qualified for educational services while he was in public school and that Plaintiff received help from the Arkansas Rehabilitation Services due to his learning disability and physical impairments. (Tr. 189-250). The record reflects Plaintiff does not have any past relevant work.

The medical evidence prior to the relevant time period reveals Plaintiff sought treatment and underwent corrective surgery for idiopathic scoliosis in January of 2001 performed by Dr. R. Dale Blaiser. (Tr. 132, 135-188). Follow-up treatment notes dated in March of 2001, report Plaintiff complained of numbness around the incision and pain in his left shoulder when lifting. (Tr. 133). Plaintiff reported he was able to ride a bike. Dr. Blaiser noted Plaintiff did have a shoulder height discrepancy that Plaintiff was able to correct passively when he tried. Dr. Blaiser recommended Plaintiff refrain from using a trampoline, bungy jumping or water skiing. Plaintiff was to return in six weeks. There is no medical evidence indicating Plaintiff returned for any follow-up treatment with Dr. Blaiser.

There is also evidence that Plaintiff underwent a psychological screening evaluation on November 8, 2004, as part of the services Plaintiff received with Arkansas Rehabilitation Services. (Tr. 243-245). After evaluating Plaintiff, Mr. Robert Trammell, a psychological examiner, opined that formal classroom training would not be a good training method for

-3-

Plaintiff; that Plaintiff would probably do better in some type of on-the-job training; that Plaintiff had enough cognitive ability to learn by being shown and told how to do something; and that Plaintiff should not be expected to perform tasks requiring quick processing and a high rate of production as Plaintiff would do better on work that required one do something slowly, carefully and correctly rather than very quickly. Mr. Trammell opined that if Plaintiff took advantage of all the services in the rehabilitation process, Plaintiff had the possibility to complete training and enter competitive employment.

The medical evidence during the relevant time period reflects the following. On October 31, 2007, Plaintiff underwent lumbar spine x-rays that revealed:

> 1. Moderately severe thoracolumbar scoliosis with corrective frontal rod present extending from T4 to L4.

> 2. Otherwise negative lumbar spine without fractures, degenerative changes, or acute findings.

(Tr. 254). Plaintiff also underwent cervical spine x-rays that revealed mild straightening of the cervical lordosis and was otherwise negative. (Tr. 255).

In November of 2007, Plaintiff underwent a general consultative physical examination performed by Dr. Marvin N. Kirk.  (Tr. 256-263).  Plaintiff reported every time he applied for a job he never received a call back and he thought that was due to his inability to pick up anything over fifty pounds. (Tr. 256). Plaintiff reported he could bend and lift but his back was weak which limited his ability to lift over fifty pounds without pain.  Dr. Kirk noted Plaintiff's report that he had no problems standing and could stand for three to four hours and that he could walk without limitation.  Plaintiff reported he completed high school in resource classes and indicated that he was a very slow learner.  Dr. Kirk noted Plaintiff's reading was very poor and

-4-

that Plaintiff could not do simple multiplications but could add and subtract satisfactorily.   Dr. Kirk opined that Plaintiff's real major problem was "mental retardness and not physical." Plaintiff reported he was not on any medication.

Upon examination, Dr. Kirk found Plaintiff's cervical spine flexion and extension were within normal limits and that he had rotation of zero to sixty degrees both right and left; and Plaintiff's lumbar spine flexion was zero to forty-five degrees.   Plaintiff's straight-leg raise was normal.   Dr. Kirk found the range of motion in Plaintiff's extremities to be within normal limits. As for other abnormalities, Dr. Kirk indicated "Rotation 5° of shoulders R & L;" bending within normal limits; and "10° scoliosis in the upper and 100 in the lower back scar from sacrum to T2."   Examination further showed normal gait and coordination, with no muscle weakness or atrophy, and no sensory abnormalities.   A limb function examination revealed Plaintiff was able to hold a pen and write; able to touch fingertips to palms; able to grip "ok;" able to oppose thumb to fingers "ok;" able to pick up a coin; able to stand and walk without assistive devices; able to walk on heel and toes; and able to squat and arise from a squatting position. Dr. Kirk diagnosed Plaintiff with scoliosis of spine severe; surgical repair of scoliosis with rods; limitation of motion of twisting and bending due to surgical repair; and mental retardation probable 80 IQ estimate. Dr. Kirk opined Plaintiff would have moderate limits with physical duties in that he could lift 40 to 50 pounds once an hour but not every 5 minutes.   Dr. Kirk opined Plaintiff would have severe limits with comprehension of most jobs.

On December 3, 2007, Plaintiff underwent a consultative mental diagnostic evaluation and intellectual assessment performed by Charles M. Spellman, Ph.D.   (Tr. 264-266).   Dr. Spellman noted Plaintiff was driven to the evaluation by his mother who reported that Plaintiff's

AO72A
(Rev. 8/82)

speech was impaired and that he stuttered. Plaintiff's mother reported Plaintiff was slow thinking and that Plaintiff did not always think before he acted. Dr. Spellman noted Plaintiff had not had any treatment for mental disorders and took no medication. Plaintiff was noted to help around the house by doing dishes and laundry. Plaintiff reported he could cook meals, drive a vehicle and go shopping by himself. Plaintiff reported he attended church regularly and could manage his own money. Plaintiff reported that he had friends. Dr. Spellman noted Plaintiff went to vocational rehabilitation in 2005 and 2006 and trained in food service. Plaintiff graduated and had since interviewed for jobs. Plaintiff reported he was finding it hard to get a job but that he was still looking. Dr. Spellman noted Plaintiff's mother commented "he's not a good interviewer because of his slow speech."

Upon evaluation, Dr. Spellman noted Plaintiff seemed to be at ease throughout the evaluation and did not stutter at any time. Dr. Spellman noted Plaintiff was slow with verbal expression. Plaintiff's mood was noted as normal and his affect was appropriate. Plaintiff's speech was noted as slow and his thought processes were logical, relevant and goal directed. Dr. Spellman noted Plaintiff's WAIS-III Full Scale IQ was 76 which placed Plaintiff in the borderline range of intelligence. Dr. Spellman diagnosed Plaintiff with Axis I Adjustment Disorder with Mixed Emotional Features and gave Plaintiff a GAF score of 60-70. Dr. Spellman stated the following:

> Mental impairments do not appear to significantly interfere with the person's day to day adaptive functioning. He can drive, shop independently and handle his own finances. He participates in social groups and can perform most ADL's autonomously.
>
> He communicates and interacts in a socially adequate manner although not as finessed as most people would like. He speaks slowly as if he has difficulty

getting the words out.  To be comfortable in conversation with him one must resign himself to waiting for slow answers to questions.  Nevertheless, he makes good eye contact and communicates effectively although somewhat slowly.

Claimant is able to cope with the cognitive demands of most work like tasks.  He is able to sustain and attend concentration on basic tasks as well as persistence.  He displayed good focus on tasks and did not give up easily.  He was able to complete tasks within an acceptable timeframe with the possible exception of written expression which was slow.

(Doc. 266).  Dr. Spellman noted Plaintiff appeared to give adequate effort/cooperation and that he could manage his own funds without assistance.

On December 17, 2007, Dr. Jerry Thomas, a non-examining medical consultant, completed a RFC assessment stating that Plaintiff could occasionally lift or carry twenty pounds, frequently lift or carry ten pounds; could stand and/or walk about six hours in an eight-hour workday; could sit about six hours in an eight-hour workday; could push or pull unlimited, other than as shown for lift and/or carry; and that postural, manipulative, visual, communicative or environmental limitations were not evident. (Tr. 273-280).  After reviewing all the evidence, Dr. Bill F. Payne affirmed Dr. Thomas's findings on February 7, 2008. (Tr. 268).

On December 18, 2007, Dr. Kay Cogbill, a non-examining medical consultant, completed a psychiatric review technique form indicating Plaintiff had mild restrictions of his activities of daily living; moderate difficulties in maintaining social functioning; had moderate deficiencies of concentration persistence or pace; and had no episodes of decompensation. (Tr. 286-299). Dr. Cogbill's notes indicate the following:

MER supports a diagnosis of adjustment disorder with depressed mood.  IQ scores and af were in the BIF range, although this was not formally diagnosed.  There is not evidence of marked or severe impairment in af. Rating is unskilled.

(Tr. 298).

On the same date, Dr. Cogbill also completed a mental RFC assessment stating that Plaintiff has moderate limitations in the following areas: in his ability to carry out detailed instructions; in his ability to maintain attention and concentration for extended periods; in his ability to sustain an ordinary routine without special supervision without being distracted by them;  in his ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; in his ability to accept instructions and respond appropriately to criticism from supervisors; in his ability to respond appropriately to changes in the work setting; and in his ability to set realistic goals or make plans independently of others. (Tr. 305-308).  Dr.  Cogbill opined that Plaintiff is "able to perform work where interpersonal contact is incidental to work performed, e.g. assembly work; complexity of tasks is learned and performed by rote, few variables, little judgement; supervision required is simple, direct and concrete. (unskilled)" (Tr. 307).  After reviewing all the evidence, Dr. Paula Lynch affirmed Dr. Cogbill's findings on February 7, 2008. (Tr. 300).

**III.    Applicable Law:**

This Court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole.  Ramirez v. Barnhart, 292 F.3d 576, 583 (8th Cir. 2002).  Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision.  The ALJ's decision must be affirmed if the record contains substantial evidence to support it.  Edwards v. Barnhart, 314 F.3d 964, 966 (8th Cir. 2003).  As long as there is substantial evidence in the record that supports the

-8-

Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the Court would have decided the case differently.  Haley v. Massanari, 258 F.3d 742, 747 (8th Cir. 2001).  In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed.  McNamara v. Astrue, 590 F.3d 607, 610 (8th Cir. 2010).

It is well-established that a claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevents him from engaging in any substantial gainful activity.  Pearsall v. Massanari, 274 F.3d 1211, 1217 (8th Cir.2001); see also 42 U.S.C. § § 423(d)(1)(A), 1382c(a)(3)(A).  The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. § § 423(d)(3), 1382(3)(c).  A Plaintiff must show that his disability, not simply his impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits:  (1) whether the claimant has engaged in substantial gainful activity since filing his claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given his age, education, and experience.  See 20 C.F.R. § 416.920.  Only if the final

-9-

stage is reached does the fact finder consider the Plaintiff's age, education, and work experience in light of his residual functional capacity.  See McCoy v. Schweiker, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C .F.R. § 416.920.

**IV.    Discussion:**

Plaintiff contends that the ALJ erred in concluding that the Plaintiff was not disabled. Defendant argues substantial evidence supports the ALJ's determination.

**A.    Subjective Complaints and Credibility Analysis:**

We first address the ALJ's assessment of Plaintiff's subjective complaints.  The ALJ was required to consider all the evidence relating to Plaintiff's subjective complaints including evidence presented by third parties that relates to:  (1) Plaintiff's daily activities; (2) the duration, frequency, and intensity of his pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness, and side effects of his medication; and (5) functional restrictions.  See Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984).  While an ALJ may not discount a claimant's subjective complaints solely because the medical evidence fails to support them, an ALJ may discount those complaints where inconsistencies appear in the record as a whole.  Id.  As the United States Court of Appeals for the Eighth Circuit observed, "Our touchstone is that [a claimant's] credibility is primarily a matter for the ALJ to decide."  Edwards v. Barnhart, 314 F.3d 964, 966 (8th Cir. 2003).

After reviewing the administrative record, it is clear that the ALJ properly evaluated Plaintiff's subjective complaints.  Although Plaintiff contends that his impairments were disabling, the evidence of record does not support this conclusion.

-10-

AO72A
(Rev. 8/82)

Regarding Plaintiff's back impairment, the evidence of record reveals Plaintiff underwent corrective surgery for his scoliosis in January of 2001. Plaintiff returned for a follow-up appointment in March of 2001, where Plaintiff reported he was doing better and that he was able to ride a bike. Plaintiff was to return in six weeks but the record reveals Plaintiff did not return for his follow up appointment. Plaintiff did report some back pain while participating in the rehabilitation program; however in January of 2005 a "Work Evaluation - Medical," form from the Hot Springs Rehabilitation Center indicates Plaintiff had no problem with standing up to eight hours, walking, balancing and sitting and some problem with lower extremity stooping, range of motion, twisting, bending, crawling and climbing. (Tr. 239-240). Plaintiff was evaluated by Dr. Kirk in 2007, who after evaluating Plaintiff, found Plaintiff would have moderate limits with physical duties in that he could lift 40 to 50 pounds once an hour but not every 5 minutes. A review of the record reveals Plaintiff was not taking any prescription medication for his alleged disabling pain. See Clevenger v. Soc. Sec. Admin., 567 F.3d 971, 976 (8th Cir.2009) (ALJ may consider that a claimant primarily used only over-the-counter pain-relief remedies to relieve symptoms). Thus, while Plaintiff may indeed experience some degree of pain due to his back impairment, the Court finds substantial evidence of record supporting the ALJ's finding that Plaintiff does not have a disabling back impairment. See Lawrence v. Chater, 107 F.3d 674, 676 (8th Cir. 1997) (upholding ALJ's determination that claimant was not disabled even though she had in fact sustained a back injury and suffered some degree of pain)

With regard to Plaintiff's mental impairments, the record reveals that Plaintiff has not sought consistent and on-going treatment for a mental disorder; however, the evidence clearly shows Plaintiff functions within the borderline intellectual level. Despite Plaintiff's mental

-11-

impairments, Dr. Spellman indicated in his December of 2007 evaluation notes that Plaintiff was able to drive a car and shop independently; was able to do household chores including laundry, cleaning dishes and simple cooking; was able to socialize with friends and attended church regularly; and was able to manage his own money. (Tr. 264). Plaintiff also reported that he had continued to seek employment. It is also noteworthy that Plaintiff did not indicate he had any conditions that affected his ability to concentrate, complete tasks, understand, follow instructions or get along with others when he completed his Function Report in October of 2007. (Tr. 101-102). Based on the record as a whole, we find substantial evidence to support the ALJ's determination that Plaintiff does not have a disabling mental impairment.

The complete evidence of record concerning Plaintiff's daily activities is also inconsistent with his claim of disability. The evidence of record reveals that, in addition to the activities Plaintiff reported he was able to perform when he was evaluated by Dr. Spellman, in October of 2007, Plaintiff reported he was able to watch television, look for work, play video games with his friends and take care of his cat and dog. (Tr. 96-104). This level of activity belies Plaintiff's complaints of limitation and the Eighth Circuit has consistently held that the ability to perform such activities contradicts a Plaintiff's subjective allegations of disability. See Hutton v. Apfel, 175 F.3d 651, 654-655 (8th Cir. 1999) (holding ALJ's rejection of claimant's application supported by substantial evidence where daily activities– making breakfast, washing dishes and clothes, visiting friends, watching television and driving-were inconsistent with claim of total disability).

With regard to the testimony of Plaintiff's step-father, the ALJ properly considered his testimony but found it unpersuasive. This determination was within the ALJ's province. See

-12-

Siemers v. Shalala, 47 F.3d 299, 302 (8th Cir. 1995); Ownbey v. Shalala, 5 F.3d 342, 345 (8th Cir. 1993).

Therefore, although it is clear that Plaintiff suffers with some degree of limitation, he has not established that he is unable to engage in any gainful activity.  Accordingly, we conclude that substantial evidence supports the ALJ's conclusion that Plaintiff's subjective complaints were not totally credible.

   **B.     RFC Assessment:**

We next turn to the ALJ's assessment of Plaintiff's RFC.  RFC is the most a person can do despite that person's limitations. 20 C.F.R. § 404.1545(a)(1).  It is assessed using all relevant evidence in the record. Id.  This includes medical records, observations of treating physicians and others, and the claimant's own descriptions of his limitations.  Guilliams v. Barnhart, 393 F.3d 798, 801 (8th Cir. 2005); Eichelberger v. Barnhart, 390 F.3d 584, 591 (8th Cir. 2004). Limitations resulting from symptoms such as pain are also factored into the assessment.  20 C.F.R. § 404.1545(a)(3).  The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." Lauer v. Apfel,  245 F.3d 700, 704 (8th Cir. 2001).  Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace." Lewis v. Barnhart, 353 F.3d 642, 646 (8th Cir. 2003).  "[T]he ALJ is [also] required to set forth specifically a claimant's limitations and to determine how those limitations affect his RFC."  Id.

In the present case, the ALJ considered the medical assessments of examining agency medical consultants, Plaintiff's subjective complaints, and his medical records when he determined Plaintiff could perform light work with limitations.  Regarding Plaintiff's physical

-13-

impairments, the ALJ specifically addressed the findings of Dr. Kirk who evaluated Plaintiff and found Plaintiff would have moderate limits with physical duties in that he could lift 40 to 50 pounds once an hour but not every 5 minutes.  There is no evidence to suggest that Plaintiff could not perform the physical demands required in the ALJ's RFC determination.

With respect to Plaintiff's mental functioning, the ALJ noted Dr. Kirk's opinion that Plaintiff had severe limitations with comprehension but relied more heavily on the findings of the mental health professionals when determining Plaintiff's mental capabilities.  Singh v. Apfel, 222 F.3d 448, 452 (8th Cir. 2000) (holding that Commissioner is encouraged to give more weight to the opinion of a specialist about medical issues related to his or her area of speciality than to the opinion of a source who is not a specialist).  In determining Plaintiff's mental capabilities, the ALJ noted the findings of Dr. Spellman and Mr. Trammell, a licensed psychological examiner, and used both opinions to determine Plaintiff's mental capacity.  The evidence reveals that in November of 2004,[1] after evaluating Plaintiff and reviewing test results, Mr. Trammell opined that formal classroom training would not be a good training method for Plaintiff; that Plaintiff had enough cognitive ability to learn by being shown and told how to do something; and that Plaintiff would do better on work which required one do something slowly, carefully and correctly rather than very quickly. (Tr. 245).  In 2007, after evaluating Plaintiff and reviewing IQ test scores, Dr. Spellman found Plaintiff's mental impairments did not appear to significantly interfere with Plaintiff's day to day adaptive functioning; that Plaintiff communicated and interacted in a socially adequate manner although not as finessed as most people would like; and that Plaintiff

---

[1]In his appeal brief, Plaintiff states Mr. Trammell evaluated Plaintiff in February of 2006; however, the evidence reveals Mr. Trammel evaluated Plaintiff on November 8, 2004.  (Tr. 243).

-14-

made good eye contact and communicated effectively although somewhat slowly.  Dr. Spellman

also found:

> Claimant is able to cope with the cognitive demands of most work like tasks.  He
> is able to sustain and attend concentration on basic tasks as well as persistence. He
> displayed good focus on tasks and did not give up easily.  He was able to complete
> tasks within an acceptable timeframe with the possible exception of written
> expression which was slow.

(Tr. 266). Based on the record as a whole, we find substantial evidence to support the ALJ's RFC

determination.

### C.      Hypothetical Question to the Vocational Expert:

We now look to the ALJ's determination that Plaintiff could perform substantial gainful

employment within the national economy. The ALJ proposed the following hypothetical question

to the vocational expert:

> Please assume an individual 22 years of age with a high school diploma, but with
> several resource classes.   Assume marginal literacy...assume reading and
> mathematics disorders.  He does have a full scale IQ of 71.  Assume a light
> exertional residual functional capacity. That is able to stand and walk six hours out
> of an eight-hour work day, sit six hours out of an eight-hour work day, lift and
> carry 20 pounds occasionally, 10 pounds frequently ... please assume the
> individual is limited to unskilled work.  That is can have interpersonal contact
> which is incidental to the work performed.  Tasks must be learned by rote and
> require limited judgment.  The individual would require little supervision for
> routine tasks with detailed supervision for non routine tasks.  According to the
> Arkansas Rehabilitation Service the individual is limited, learning disorder
> suggest[s] that formal classroom training would not be a good training method.
> The individual would do better in on the job training. Would be better on work
> that requires that work be performed slowly, carefully, more slowly, carefully, and
> correctly rather than very quickly...as far as education is concerned, add to that the
> individual has completed an Arkansas Rehabilitation Service course in food
> service, that is primarily cooking and baking.  Based on these limitations, are there
> any jobs that exist in significant numbers that such an individual could perform?

-15-

(Tr. 38-39). After listening to the above hypothetical, the vocational expert testified that the hypothetical person would be able to perform work as a shirt presser and in light housekeeping. (Tr. 39-40).

Plaintiff argues that according to the Dictionary of Occupational Titles (DOT),  the shirt presser and housekeeping jobs require a higher intellectual functioning than that of the Plaintiff. (Doc.  9, p. 11). Defendant argues that the vocational expert did not identify the jobs in question by DOT reference number; that Plaintiff's counsel did not ask for DOT reference numbers during cross-examination of the vocational expert; and that Plaintiff failed to cite to any DOT reference numbers in his brief. (Doc. 10, p. 6).  Due to this lack of information, Defendant states Plaintiff failed to articulate any claim of error to which Defendant can reasonably respond.

"[A] claimant's reliance on the DOT as a definitive authority on job requirements is misplaced because DOT definitions are simply generic job descriptions that offer the approximate maximum requirements for each position, rather than their range."  Page v. Astrue, 484 F.3d 1040, 1045 (8th Cir. 2007)(internal quotation marks omitted). "The DOT itself cautions that its descriptions may not coincide in every respect with the content of jobs as performed in particular establishments or at certain localities." Wheeler v. Apfel, 224 F.3d 891, 897 (8th Cir.2000).  "In other words, not all of the jobs in every category have requirements identical to or as rigorous as those listed in the DOT." Id, 224 F.3d at 897.

The record in the present case supports the ALJ's conclusion that Plaintiff could perform certain available jobs within the economy.  See Hall v. Chater, 109 F.3d 1255, 1259 (8th Cir. 1997)(court satisfied that claimant could perform a number of jobs within the categories the vocational expert listed, despite her impairments).  We find that the hypothetical the ALJ posed

-16-

to the vocational expert fully set forth the impairments which the ALJ accepted as true and which were supported by the record as a whole.  <u>See</u> <u>Long v. Chater</u>, 108 F.3d 185, 188 (8th Cir. 1997); <u>Pickney v. Chater</u>, 96 F.3d 294, 296 (8th Cir. 1996).  Accordingly, we find that the vocational expert's testimony constitutes substantial evidence supporting the ALJ's conclusion that Plaintiff was able to perform other work as a housekeeper and a shirt presser.  <u>Pickney</u>, 96 F.3d at 296 (testimony from vocational expert based on properly phrased hypothetical question constitutes substantial evidence).

**V.      Conclusion:**

Accordingly, having carefully reviewed the record, the undersigned finds substantial evidence supporting the ALJ's decision denying the Plaintiff benefits, and thus the decision should be affirmed.  The undersigned further finds that the Plaintiff's Complaint should be dismissed with prejudice.

DATED this 8th day of April 2011.

/s/ *Erin L. Setser*
_____
HON. ERIN L. SETSER
UNITED STATES MAGISTRATE JUDGE

-17-